Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JADE TRINH,<br><br>      Plaintiff,<br><br>  vs.<br><br>POINT BIOPHARMA GLOBAL INC.,<br>ALLAN SILBER, JONATHAN ROSS<br>GOODMAN, RAJESH K. MALIK, YAEL<br>MARGOLIN, DAVID C. LUBNER,<br>BRIDGET MARTELL, NEIL<br>FLESHNER, GERRY HOGUE, and JOE<br>McCANN,<br><br>      Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary<br>Duties<br>(3) Violation of § 14 (e) of the Securities<br>   Exchange Act of 1934<br>(4) Violation of § 14 (d) of the Securities<br>   Exchange Act of 1934<br>(5) Violation of § 20(a) of the Securities<br>   Exchange Act of 1934<br><br>   **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Jade Trinh ("Plaintiff"), by and through her attorneys, alleges upon information

and belief, except for those allegations that pertain to her, which are alleged upon personal

knowledge, as follows:

### <u>SUMMARY OF THE ACTION</u>

1. Plaintiff brings this stockholder action against POINT Biopharma Global Inc.

("POINT" or the "Company") and the Company's Board of Directors (the "Board" or the

"Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Eli Lilly and Company, ("Parent"), through a wholly owned subsidiary, Yosemite Falls Acquisition Corporation ("Merger Sub" collectively with Parent, "Eli Lilly") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 3, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of POINT common stock owned, POINT stockholders will receive $12.50 in cash.  As a result of the consummation of the Proposed Transaction, POINT will become an indirect wholly-owned subsidiary of Parent.

3.      Thereafter, on October 13, 2023, POINT filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange Company options and restricted stock awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their POINT shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

6. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for POINT, provided by POINT to the Company's financial advisor Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Centerview and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8. Plaintiff is a citizen of Pennsylvania and is a POINT stockholder.

9. Defendant POINT is a radiopharmaceutical company, develops and commercializes radioligands that fight cancer. POINT is incorporated under the laws of the State of Delaware and has its principal place of business at 4850 West 78th Street, Indianapolis, IN 46268. Shares of POINT common stock are traded on the NASDAQ Stock Exchange under the symbol "PNT".

3

10.     Defendant Allen Silber ("Silber") has been a Director of the Company at all relevant times.  In addition, Silber serves as the Board's Executive Chairman.

11.     Defendant Jonathan Ross Goodman ("Goodman") has been a Director of the Company at all relevant times.

12.     Defendant Rajesh K. Malik ("Malik") has been a director of the Company at all relevant times.

13.     Defendant Yael Margolin ("Margolin") has been a director of the Company at all relevant times.

14.     Defendant David C. Lubner ("Lubner") has been a director of the Company at all relevant times.

15.     Defendant Bridget Martell ("Martell") has been a director of the Company at all relevant times.

16.     Defendant Neil Fleshner ("Fleshner") has been a director of the Company at all relevant times.

17.     Defendant Gerry Hogue ("Hogue") has been a director of the Company at all relevant times.

18.     Defendant Joe McCann ("McCann") has been a director of the Company at all relevant times.  In addition, McCann serves as the Company's Chief Executive Officer ("CEO").

19.     Defendants identified in ¶¶ 10 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Parent is a pharmaceutical company that discovers, develops, and markets human pharmaceuticals worldwide.  Parent is incorporated in the state of Indiana and has its primary place of business at Lilly Corporate Ctr., Drop Code 1094, Indianapolis, IN 46285.

Shares of Parent common stock are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "LLY".

21.     Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with POINT and owe the public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

26.     By virtue of their positions as directors and/or officers of POINT, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause POINT to engage in the practices complained of herein.

27.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff.  To diligently comply with these duties, directors of a corporation must:

    a.  act with the requisite diligence and due care that is reasonable under the circumstances;

    b.  act in the best interest of the Company and its public stockholders, including Plaintiff;

    c.  use reasonable means to obtain material information relating to a given action or decision;

    d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

    e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

      f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

28.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of POINT, are obligated to refrain from:

      a.    participating in any transaction where the directors' or officers' loyalties are divided;

      b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

      c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders including Plaintiff.

29.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of POINT, including their duties of loyalty, good faith, and due care.

30.    As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for her POINT common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

31.    POINT is a radiopharmaceutical company that develops and commercializes radioligands that fight cancer. The Company's lead product candidates include PNT2002, a

prostate-specific membrane antigen (PSMA) targeted radioligand that is in Phase III trial for the treatment of metastatic castration-resistant prostate cancer; and PNT2003, a somatostatin-targeted radioligand, which is in Phase III trial for the treatment of neuroendocrine tumors.

32.     The Company is also developing PNT2001, a next-generation PSMA-targeting product candidate for the treatment of prostate cancer, which is under preclinical studies; and PNT-2004, a fibroblast activation protein-alpha inhibitor targeting program being developed for use in various tumor types that is under preclinical studies. In addition, POINT has product candidates being developed on CanSEEK technology sub-licensed from both Bach Biosciences LLC and Avacta Life Sciences Limited.

33.     The Company's recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid performance.  For example, in the August 14, 2023 press release announcing its 2023 Q2 Financials, the Company noted such positive pipeline developments as increased progress on three of its major drug candidates.

34.     Speaking on these positive results CEO and Defendant McCann stated as follows: "This quarter, we began to reveal our strategy to realize one of the great opportunities presented by radioligands – the use of patient imaging to evaluate how candidate ligands perform in humans before committing substantial time and resources required to run an interventional trial."

35.     Defendant McCann continued, noting bright future prospects for POINT: "We are committed to leveraging these theranostic principles and making data-driven program investment decisions in pursuit of accelerated development pathways for new targeted radioligand therapies."

36.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success by POINT.  Clearly, based upon these positive results and outlook, the Company is likely to have great future success.

37.     Despite this upward trajectory and solid financial results, the Individual Defendants have caused POINT to enter into the Proposed Transaction without providing requisite information to POINT stockholders such as Plaintiff.

***The Flawed Sales Process***

38.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.  Moreover, the Recommendation is materially deficient in the information it fails to provide.

39.     The Recommendation Statement fails to disclose whether a committee of independent board members was created to run the sales process.  If such a committee was created, the Recommendation Statement should disclose the members of that committee and its specific powers.  On the other hand, if no such committee was created, the Recommendation Statement should disclose the specific reasoning for not creating such a committee.

40.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Eli Lilly, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

41.     The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into

between the Company and any potentially interested third parties, throughout the sales process, if any, would fall away.

42.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

43.    On October 3, 2023, POINT and Eli Lilly issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **INDIANAPOLIS, Oct. 3, 2023** – Eli Lilly and Company (NYSE: LLY) and POINT Biopharma Global, Inc. (NASDAQ: PNT) today announced a definitive agreement for Lilly to acquire POINT, a radiopharmaceutical company with a pipeline of clinical and preclinical-stage radioligand therapies in development for the treatment of cancer. Radioligand therapy can enable the precise targeting of cancer by linking a radioisotope to a targeting molecule that delivers radiation directly to cancer cells, enabling significant anti-tumor efficacy while limiting the impact to healthy tissue.
>
> POINT's lead programs are in late-phase development. PNT20021 is a prostate-specific membrane antigen (PSMA) targeted radioligand therapy in development for patients with metastatic castration-resistant prostate cancer (mCRPC) after progression on hormonal treatment. Topline data from this study are expected in the fourth quarter of 2023. PNT20031 is a somatostatin receptor (SSTR) targeted radioligand therapy in development for the treatment of patients with gastroenteropancreatic neuroendocrine tumors (GEP-NETs). Beyond the late-stage clinical pipeline, POINT has several additional programs in earlier stages of clinical and preclinical development. Additionally, POINT operates a 180,000-square-foot radiopharmaceutical manufacturing campus in Indianapolis, as well as a radiopharmaceutical research and development center in Toronto. These facilities will be utilized alongside POINT's extensive network of supply chain partners for sourcing radioisotopes and their precursors.
>
> "Over the past few years, we have seen how well-designed radiopharmaceuticals can demonstrate meaningful results for patients with cancer and rapidly integrate into standards of care, yet the field remains in the early days of the impact it may ultimately deliver," said Jacob Van Naarden President of Loxo@Lilly, the oncology unit of Eli Lilly and Company. "We are excited by the potential of this emerging modality and see the acquisition of POINT as the beginning of our investment in developing multiple meaningful radioligand medicines for hard-to-treat cancers, as we have done in small molecule and biologic oncology drug discovery and development. We look forward to welcoming POINT colleagues to

Lilly and working together to build upon their achievements as we develop a pipeline of meaningful new radioligand treatments for patients."

Joe McCann, Ph.D., CEO of POINT added: "The combination of POINT's team, infrastructure and capabilities with Lilly's global resources and experience could significantly accelerate the discovery, development and global access to radiopharmaceuticals. I look forward to a future where patients all over the world can benefit from the new cancer treatment options made possible by the joining of our two companies today."

**Terms of the Agreement**

Lilly will commence a tender offer to acquire all outstanding shares of POINT for a purchase price of $12.50 per share in cash (an aggregate of approximately $1.4 billion) payable at closing. The transaction has been approved by the boards of directors of both companies.

The transaction is not subject to any financing condition and is expected to close near the end of 2023, subject to customary closing conditions, including the tender of a majority of the outstanding shares of POINT's common stock, and license transfer approval from the U.S. Nuclear Regulatory Commission. Following the successful closing of the tender offer, Lilly will acquire any shares of POINT that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

The purchase price payable at closing represents a premium of approximately 87% to POINT's closing stock price on Oct. 2, 2023, the last trading day before the announcement of the transaction, and 68% to the 30-day volume-weighted average price. POINT's board of directors unanimously recommends that POINT's stockholders tender their shares in the tender offer.

Lilly will determine the accounting treatment of this transaction as a business combination or an asset acquisition, including any related acquired in-process research and development charges, according to Generally Accepted Accounting Principles (GAAP) upon closing. This transaction will thereafter be reflected in Lilly's financial results and financial guidance.

For Lilly, Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Kirkland & Ellis LLP is acting as legal counsel. For POINT, Centerview Partners LLC is acting as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel.

*The Inadequate Merger Consideration*

44.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

45.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.

46.     Moreover, post-closure, Plaintiff will be frozen out of her ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

47.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Parent at the expense of POINT stockholders, including specifically Plaintiff, which clearly indicates that Plaintiff in her capacity as a POINT stockholder was not an overriding concern in the formation of the Proposed Transaction.

### *Potential Conflicts of Interest*

48.     The breakdown of the benefits of the deal indicates that POINT insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of POINT.

48.     Company insiders currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

**Table of Share-Based Payments**

| Name | Number of Shares (#) | Total Merger Consideration Payable for Shares ($) |
|---|---|---|
| Allan Silber | 9,227,975 | 115,349,688 |
| Jonathan Ross Goodman | 41,872 | 523,400 |
| Rajesh K. Malik | 3,700 | 46,250 |
| Yael Margolin | 1,710 | 21,375 |
| David C. Lubner | 39,000 | 487,500 |

| | | |
|---|---:|---:|
| Bridget Martell | — | — |
| Gerry Hogue | 21,596 | 269,950 |
| Joe McCann | 3,616,313 | 45,203,913 |
| Bill Demers | — | — |
| Justyna Kelly | — | — |
| Neil Fleshner | 3,256,574 | 40,707,175 |
| Ari Shomair | 771,258 | 9,640,725 |
| Jessica Jensen | — | — |
| Myra Rosario Herrle | — | — |
| Chris Horvath | — | — |
| Matthew Vincent | — | — |
| Valerie Hergott | — | — |
| Robin Hallett | 15,900 | 198,750 |
| Jazz Braich | — | — |

49.    Company insiders currently own large amounts of Company stock options, restricted shares, or other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

**Table of Equity Compensation-Related Payments**

| Name | Vested POINT Stock Options | | Unvested POINT Stock Options | | POINT PSUs | | Total Option Cash Consideration and PSU Cash Consideration Payable($)[7] |
|---|---:|---:|---:|---:|---:|---:|---:|
| | Number of Underlying Shares[1] | Option Cash Consideration Payable($)[2] | Number of Underlying Shares[3] | Option Cash Consideration Payable($)[4] | Number of Underlying Shares[5] | PSU Cash Consideration Payable($)[6] | |
| Allan Silber | 88,209 | 419,780 | 788,376 | 4,182,026 | 33,469 | 418,363 | 5,020,169 |
| Jonathan Ross Goodman | 56,050 | 256,884 | 75,185 | 300,812 | — | — | 557,696 |
| Rajesh K. Malik | 38,114 | 157,698 | 57,249 | 201,626 | — | — | 359,324 |
| Yael Margolin | 38,114 | 157,698 | 57,249 | 201,626 | — | — | 359,324 |
| David C. Lubner | 38,114 | 157,698 | 57,249 | 201,626 | — | — | 359,324 |
| Bridget Martell | — | — | 80,503 | 194,817 | — | — | 194,817 |
| Gerry Hogue | 38,114 | 157,698 | 75,185 | 164,812 | | | 322,510 |
| Joe McCann | 95,448 | 417,111 | 978,990 | 4,943,249 | 23,124 | 289,050 | 5,649,410 |
| Bill Demers | 169,247 | 892,796 | 263,601 | 1,378,424 | 13,234 | 165,425 | 2,436,645 |
| Justyna Kelly | 52,012 | 276,247 | 224,352 | 1,222,693 | 12,782 | 159,775 | 1,658,715 |
| Neil Fleshner | 27,559 | 116,182 | 141,933 | 729,746 | — | — | 845,928 |
| Ari Shomair | 140,797 | 1,334,298 | 305,822 | 1,080,134 | 8,464 | 105,800 | 2,520,232 |
| Jessica Jensen | 287,393 | 1,178,245 | 536,983 | 2,454,135 | — | — | 3,632,400 |
| Myra Herrle | 64,309 | 262,329 | 175,283 | 871,951 | 11,930 | 149,125 | 1,283,405 |
| Chris Horvath | 25,000 | 126,250 | 271,784 | 1,276,350 | 12,575 | 157,188 | 1,559,788 |
| Matthew Vincent | 21,250 | 141,738 | 139,754 | 2,136,308 | 9,762 | 122,025 | 2,400,071 |
| Valerie Hergott | 40,088 | 204,349 | 75,220 | 389,339 | 7,255 | 90,688 | 684,376 |
| Robin Hallett | 13,936 | 76,216 | 79,136 | 444,696 | | 92,338 | 613,250 |

50.     In addition, certain employment agreements with certain POINT executives entitle such executives to certain severance benefits, compensation not shared by Plaintiff, as follows:

**Table of Potential Executive Severance Payments**

| Name | Estimated Cash Severance ($) |
|------|------------------------------|
| Joe McCann | 646,506 |
| Bill Demers | 405,354 |
| Justyna Kelly | 297,500 |
| Neil Fleshner | 704,693 |
| Ari Shomair | 405,354 |
| Jessica Jensen | 540,549 |
| Myra Herrle | 189,713 |
| Chris Horvath | 198,550 |
| Matthew Vincent | 155,000 |
| Valerie Hergott | 286,735 |
| Jazz Braich | 270,297 |
| Allan Silber | 489,740 |

51.     Moreover, the Recommendation Statement fails to adequately state whether or not certain change-in-control employment agreements exists with certain POINT executives that would entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and, if existing, would grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff or other public Company stockholders.

52.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53.     Thus, while the Proposed Transaction is not in the best interests of POINT, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

54.     On October 13, 2023, the POINT Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

55.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

    a.  Adequate disclosure regarding whether any Special Committee was created to run the sales process, and if so whether that committee was empowered to veto a potential transaction not in the best interest of common shareholders;

    b.  In the event that no Special Committee was created to run the sales process, adequate disclosure of the reasoning underlying that decision;

    c.  Whether any "change in control" or "golden parachute" agreements exist and apply to any current Company Board members or Executives, and if so a quantification of the payments owed under such agreements should the consummation of the Proposed Transaction trigger such payments;

d.   Whether the terms of any confidentiality agreements entered during the sales process between POINT on the one hand, and any other third party (including Eli Lilly), if any, on the other hand, differed from one another, and if so, in what way;

e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, if any, would fall away; and

f.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction, which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning POINT's Financial Projections*

56.   The Recommendation Statement fails to provide material information concerning financial projections for POINT provided by POINT management and relied upon by Centerview in its analyses.

57.   Notably, in its fairness opinion, Centerview indicates that it reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of POINT, including certain financial forecasts, analyses and projections relating to POINT prepared by management of POINT and furnished to Centerview by POINT for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the "Forecasts," and which are collectively referred to in this summary of Centerview's opinion as the "Internal Data.""

58.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that POINT management provided to the Board and Centerview.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

59.     With regard to the *Projections (Risk Adjusted)* prepared by POINT management and provided to Centerview, the Recommendation Statement fails to disclose material line items for important metrics as follows:

     a.   Gross Profit, including the specific inputs, metrics, and assumptions used to determine the same, including specifically: cost of goods sold and commercial scale-up manufacturing expenses; and

     b.   EBIT, including the specific inputs, metrics, and assumptions used to determine the same, including specifically: earnings, interest and taxes.

60.     With regard to the *Projections (Risk Adjusted)* prepared by Centerview at POINT's direction in order to calculate unlevered free cash flow, the Recommendation Statement fails to disclose material line items for important metrics as follows:

     a.   EBIT, including all specific inputs, metrics, and assumptions used to determine the same, including specifically.

61.     The Recommendation Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all sets of provided projections.

62.     The Recommendation Statement also fails to provide all adjustments and assumptions made underlying the different cases of each set of projections.

63.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

64.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

65.     In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

66.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific metrics, inputs, and assumptions used to determine the utilized
       discount rates of 12.5% to 14.5%;

18

    b.   The weighted average cost of capital for the Company utilized, and the specific metrics, inputs, and assumptions used to calculate the same;

    c.   The terminal value for the Company calculated;

    d.   The specific metrics, inputs, and assumptions used to determine that unlevered free cash flows would decline in perpetuity after December 31, 2046 at a rate of free cash flow decline of 30% year over year with the exception of platform and corporate cash flows increasing 3% year over year in perpetuity;

    e.   The specific cash flow benefit to POINT from usage of POINT's estimated net operating losses as provided by POINT's management figures utilized; and

    f.   The number of fully-diluted outstanding shares of the Company as of September 28, 2023.

67.    With respect to the *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific price targets analyzed; and

    b.   The specific Wall Street firms that created the analyzed price targets.

68.    With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific premiums analyzed; and

    b.   The specific metrics, inputs, and assumptions used to determine the utilized premium range of 55% to 105%.

69.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

70.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in her capacity as a Company public stockholder.

73.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of her investment in POINT.

74.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in her capacity as a Company public stockholder by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in her capacity as a Company public stockholder.

75.     Indeed, Defendants have accepted an offer to sell POINT at a price that fails to reflect the true value of the Company, thus depriving Plaintiff in her capacity as a Company public stockholder of the reasonable, fair and adequate value of her shares.

76.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in her capacity as a Company public stockholder all material

information necessary for it to make an informed decision on whether to vote her shares in favor of the Proposed Transaction.

77.     The Individual Defendants dominate and control the business and corporate affairs of POINT and are in possession of private corporate information concerning POINT's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in her capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

78.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in her capacity as a Company public stockholder.

79.     As a result of the actions of the Individual Defendants, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive its fair portion of the value of POINT's assets and has been and will be prevented from obtaining a fair price for her holdings of POINT common stock.

80.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in her capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

81.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**(Against Defendant POINT)**

82.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.     Defendant POINT knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

84.     As a result this conduct, Plaintiff in her capacity as a Company public stockholder will suffer irreparable injury in that she has not and will not receive her fair portion of the value of POINT's assets and has been and will be prevented from obtaining a fair price for its holdings of POINT common stock.

85.     Plaintiff has no adequate remedy at law

### THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

85.     Plaintiff repeats all previous allegations as if set forth in full herein.

86.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

87.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

88.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

89.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

90.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

91.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

92.     Plaintiff has no adequate remedy at law.

## FOURTH COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

93.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

94.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

95.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

96.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

97.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

98.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

99.     Plaintiff has no adequate remedy at law.

## FIFTH COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

100.     Plaintiff repeats all previous allegations as if set forth in full herein.

101.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

102.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

103.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of POINT's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

104.     The Individual Defendants acted as controlling persons of POINT within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause POINT to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled POINT and all of its employees.  As alleged above, POINT is a primary violator of Section 14 of the Exchange Act and

SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 25, 2023          **BRODSKY & SMITH**

By: *Evan J. Smith*
        Evan J. Smith
        240 Mineola Boulevard
        Mineola, NY  11501
        Phone: (516) 741-4977
        Facsimile (561) 741-0626

*Counsel for Plaintiff*